

FILED
JAN 10 2007
T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**DARRELL M. KNOX and TONI KNOX**                          **PLAINTIFFS**

VS.                                           CIVIL ACTION NO. 5:07cv6 DCB-JMR

**JOSE FERRER, M.D., and**
**RIVER REGION HEALTH SYSTEM d/b/a**
**RIVER REGION MEDICAL CENTER**                            **DEFENDANTS**

## COMPLAINT
### [Trial by Jury Requested]

**COME NOW** the Plaintiffs, Darrell M. Knox and Toni Knox, and file this Complaint against Jose Ferrer, M.D., and River Region Health System d/b/a River Region Medical Center. The grounds are:

### A. PARTIES

1. The Plaintiffs, Darrell M. Knox and Toni Knox, ("Plaintiffs") are adult resident citizens of Mobile County, Alabama, and currently reside at 505 Fort Mims Place, Dauphin Island, Alabama 36528.

2. Defendant Jose Ferrer, M.D. ("Dr. Ferrer") is an adult resident citizen of Warren County, Mississippi, and can be served with process of this Court at his place of employment, The Vicksburg Clinic, 1115 North Frontage Road, Vicksburg, Mississippi 39180.

3. Defendant River Region Health System d/b/a River Region Medical Center ("River Region") is a foreign corporation doing business in the State of Mississippi, and can be served with process by serving its registered agent CSC of Rankin County, Inc., 2829 Lakeland Drive,

1

Suite 1502, Flowood, Mississippi 39232.

## B. JURISDICTION/VENUE

4. Subject matter jurisdiction is proper in this court. There is complete diversity of citizenship between the Plaintiffs and the Defendants, and the matter in controversy is in excess of *Seventy-Five Thousand Dollars ($75,000.00)*, exclusive of interests and costs. Jurisdiction is therefore proper in this Court pursuant to *28 U.S.C. § 1332*.

5. Venue is also proper in this court as all defendants reside within the Southern District of Mississippi, Western Division, and a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Mississippi, Western Division. Venue is therefore proper in this Court pursuant to *28 U.S.C. § 1391*.

## C. COMPLIANCE WITH STATUTES

6. Written notice of intention to file this action has been provided to the Defendants pursuant to *Miss. Code Ann.* § 15-1-36(5). See Notice letter attached as Exhibit "A."

7. Attached to this Complaint as Exhibit "B" is a Certificate of Compliance and Expert Consultation pursuant to the requirements of *Miss. Code Ann.* § 11-1-58(1)(a).

## D. FACTS GIVING RISE TO CAUSE OF ACTION

8. At approximately 9:30 p.m., on or about March 1, 2006, Plaintiff Darrell Knox ("Mr. Knox") was involved in an automobile accident near Tallulah, Louisiana, during which Mr. Knox's vehicle rolled over and collided with several trees.

9. Around 10:55 p.m., Mr. Knox presented to the emergency room at Madison Parish Hospital in Tallulah, Louisiana, with complaints of left leg and ankle pain secondary to the accident.

10. While in the emergency department at Madison Parish Hospital, x-rays were taken of Mr. Knox's left leg, ankle and foot. The leg and ankle x-rays demonstrated an oblique comminuted fracture of the distal fibula, with small avulsion fractures involving the tip of the medial and lateral malleoli, and a nondisplaced vertical fracture through the central portion of the talus with soft tissue swelling seen. The x-ray of the left foot demonstrated oblique severely comminuted fractures involving the shafts of the second through fifth metatarsals, with displacement and separation of fracture fragments at all fracture sites with associated soft tissue swelling.

11. At approximately 12:45 a.m., on March 2, 2006, orders were given to transfer Mr. Knox from Madison Parish Hospital in Tallulah to Defendant River Region Medical Center ("River Region") in Vicksburg, Mississippi. Mr. Knox presented to the emergency room at River Region via ambulance at approximately 2:14 a.m. on March 2. Repeat x-rays of the left ankle and foot were done in the ER which confirmed the fractures previously diagnosed at Madison Parish Hospital.

12. Mr. Knox was admitted to the floor at River Region at approximately 4:25 a.m., and examined by Dr. Ferrer whose plan was to perform a closed reduction of the left ankle and foot fractures and placement of a long-leg cast. Mr. Knox was placed on PCA morphine for pain relief and awaited the procedure.

13. Mr. Knox was transported to the operating room at approximately 8:25 a.m., and Dr. Ferrer began the closed manipulation around 9:04 a.m. By 9:43 a.m., Mr. Knox was in the recovery room with a long-leg cast to the left lower extremity, and at approximately 10:13 a.m., he was transferred to the floor.

14. Following the closed manipulation and application of the long-leg cast, Mr. Knox continued to experience severe pain after he made repeated complaints to the nurses and hospital staff. At approximately 11:25 a.m., Demerol 50 mg IV was given for his complaints of pain in the left ankle, but the pain continued, and at 4:00 p.m., he was given a second dose of Demerol 50 mg IV for pain in his left leg. He made additional complaints of severe, excruciating pain at 7:30 p.m., 9:00 p.m., and 11:15 p.m., on March 2, with pain medications being administered.

15. Mr. Knox continued to experience severe pain into the morning of March 3, 2006. He made complaints at 2:30 a.m. and 4:30 a.m., and at 9:00 a.m., he complained of severe pain in his left ankle and foot and an oral dose of Percocet was administered.

16. Mr. Knox was discharged via wheelchair at approximately 9:12 a.m., on March 3, 2006. Prior to his discharge, Mr. Knox made the nursing staff and Dr. Ferrer aware that he was traveling to New Mexico, but that he would return home if necessary. However, Dr. Ferrer indicated that Mr. Knox should see an orthopedist in one (1) to two (2) weeks, and discharged Mr. Knox.

17. After discharge, Mr. and Mrs. Knox proceeded toward New Mexico, but only made it as far as Graham, Texas, on March 4, 2006, at which time Mr. Knox's pain was so severe he presented to the emergency room at Graham Regional Medical Center. At Graham, the anterior portion of the cast was removed revealing severe swelling, blood-filled bulla, malodor of the lower left leg, and loss of sensation in the toes. Mr. Knox was transferred to Palo Pinto General Hospital in Mineral Wells, Texas, where compartment pressures were measured to exceed the 30 to 40 mm/Hg commonly believed to constitute compartment syndrome.

18. Mr. Knox was admitted to Palo Pinto Hospital with a diagnosis of compartment syndrome, left foot with necrosis of the soft tissue. Fasciotomies were performed, and on March 7, 2006, Mr. Knox was transferred to Parkland Hospital in Dallas, Texas for potential evaluation of possible skin grafting to his left foot. Upon surgical exploration of the left foot area of necrosis at Parkland Hospital on March 7, it was determined that given the nature, purulence, and exposed bone present, a standard guillotine below-the-knee amputation should be performed. Mr. Knox's left leg was amputated below the knee on March 7, 2006.

### E. **NEGLIGENCE OF DEFENDANT DR. JOSE FERRER**

19. At all times herein, Dr. Ferrer was required to exercise that degree of reasonable skill, care, competence and prudence normally exercised by minimally competent orthopedic physicians under like or similar circumstances. Dr. Ferrer failed to exercise that degree of skill and care and was negligent in the following respects:

   a. In the face of numerous complaints of pain following the placement of the long-leg cast, Dr. Ferrer failed to split the cast in an attempt to relieve the pain and/or to determine the cause of the pain;

   b. Rather than hospitalizing Mr. Knox in order to adequately monitor the swelling in Mr. Knox's left leg and to allow Mr. Knox to keep his leg elevated following placement of the long-leg cast, Dr. Ferrer discharged Mr. Knox home with instructions to follow-up with an orthopedist in one (1) to two (2) weeks;

   c. Dr. Ferrer discharged Mr. Knox with full knowledge that Mr. Knox was several hours away from his home in Alabama, and that it would not be

    possible to keep his leg elevated in an automobile to make the drive home;

d. Prior to Mr. Knox's discharge from River Region, Dr. Ferrer failed to adequately assess Mr. Knox's condition in the face of Mr. Knox's continued complaints of throbbing pain in his left leg, and;

e. Other deviations from the applicable standard of care or acts of negligence to be shown at trial, that may be later discovered.

### F. **NEGLIGENCE OF DEFENDANT HOSPITAL**

20. Defendant River Region Health System d/b/a River Region Medical Center, by and through its employees and medical personnel, in their care and treatment of Darrell Knox, was required to exercise such reasonable care and attention as Mr. Knox's physical condition required. River Region, by and through its employees and medical personnel, failed to exercise that degree of care and attention, and was negligent in the following respects:

a. In the face of numerous complaints of pain following the placement of the long-leg cast, River Region, by and through its employees and medical personnel, failed to adequately assess Mr. Knox's condition;

b. Prior to Mr. Knox's discharge from the hospital, River Region, by and through its employees and medical personnel, failed to adequately assess Mr. Knox's condition , especially with Mr. Knox's continued complaints of throbbing pain in his left leg, and;

c. Other deviations from the applicable standard of care or acts of negligence to be shown at trial, that may be later discovered.

6

## G. RESPONDEAT SUPERIOR

21. At all times relevant to this cause of action, Dr. Ferrer was acting within the course and scope of his employment with River Region Health System. Thus, River Region Health System is vicariously liable for the acts and/or omissions of Dr. Ferrer in his care and treatment of Mr. Knox.

## H. DAMAGES

22. As a direct and proximate result of the joint and several negligence of Dr. Ferrer and River Region, acting through its employees and medical personnel, Darrell Knox suffered a compartment syndrome in his left leg which resulted in severe and permanent disabling and disfiguring injuries resulting in damages including, but not limited to:

    a. Loss of his left lower leg, below the knee;

    b. Physical pain and suffering–past, present and future;

    c. Mental and emotional suffering–past, present and future;

    d. Permanent disability;

    e. Permanent disfigurement;

    f. Lost wages;

    g. Loss of future earning capacity

    h. Medical, medically-related, and rehabilitative expenses, past, present and future, and;

    i. Other damages to be shown at trial.

## I. LOSS OF CONSORTIUM

23. At all times herein mentioned, Darrell Knox and Toni Knox were husband and wife.

Pursuant to *Miss. Code Ann.* §93-3-1, Mrs. Knox is entitled to recover damages for loss of consortium for the injuries to her husband Darrell Knox, as a result of the joint and several negligence of the Defendant(s) Dr. Ferrer and River Region.

### J. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs Darrell M. Knox and Toni Knox bring this action and request judgment against the Defendants Jose Ferrer, M.D., and River Region Health System, d/b/a River Region Medical Center, jointly and severally, in an amount within the jurisdictional limits of this Court, along with prejudgment interest, post-judgment interest, and all costs of this proceeding.

THIS the 9th day of January, 2007.

Respectfully submitted,

**DARRELL M. KNOX and TONI KNOX**

By: /s/ Walter Morrison
One of Their Attorneys

Walter C. Morrison, IV, MSB No. 9653
Bobby L. Dallas, MSB No. 5778
Bryan P. Doyle, MSB No. 100729
SESSUMS, DALLAS & MORRISON, PLLC
2829 Lakeland Drive, Suite 1650
Mirror Lake Plaza
Jackson, Mississippi 39232
Telephone: 601.933.2040
Facsimile: 601.933.2050

## CERTIFICATE OF COMPLIANCE AND EXPERT CONSULTATION

I, **WALTER C. MORRISON, IV,** pursuant to *Miss. Code Ann.* § 11-1-58, do hereby certify that I have reviewed the facts of this case, and have consulted with at least one (1) expert qualified pursuant to the *Federal Rules of Civil Procedure*, and the *Federal Rules of Evidence*, to give expert testimony as to standard of care or negligence, and who is reasonably believed to be knowledgeable in the relevant issues involved in this particular action. I have further concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

**THIS** the 9th day of January, 2007.

_____
Walter C. Morrison, IV

9