IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


DARRELL M. KNOX
AND TONI KNOX                                           PLAINTIFFS

VS.                           CIVIL ACTION NO. 5:07-cv-6(DCB)(JMR)

JOSE FERRER, M.D., AND
RIVER REGION HEALTH SYSTEM,
D/B/A RIVER REGION MEDICAL CENTER                        DEFENDANTS


ORDER

This cause is before the Court on the defendants' motion in
limine **(docket entry 51)** to exclude any reference to or claim for
loss of future income by Darrell Knox.  Having carefully considered
the motion and response, the memoranda, exhibits and applicable
law, and being otherwise fully advised in the premises, the Court
finds as follows:

In this medical malpractice action, the plaintiffs allege that
Darrell Knox ("Knox") failed to receive appropriate medical care
from the defendants, resulting in a subsequent below-the-knee
amputation of his left leg.  The plaintiffs have designated as
experts Jack Sink ("Sink")(a vocational and rehabilitation expert)
and Richard Thompson ("Thompson")(an economist), who opine that
Knox will lose his job as an electrical technician in the petroleum
field and will suffer future lost earnings of approximately 1.3
million dollars.  The defendants assert that the opinions and
proposed testimony of Sink and Thompson related to future lost
wages do not meet the standards established under <u>Daubert v.</u>

Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Federal Rule of Evidence 702.

> Rule 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evi. 702. The Supreme Court has stated that Rule 702 should be employed by trial judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 593. Daubert sets forth a non-exhaustive, "flexible" list of factors that district courts may use in analyzing the reliability of an expert's proffered testimony, including "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (2) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002)(citing Daubert, 509 U.S. at 593-94; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999)). The goal of Daubert is to "ensure the reliability and relevancy of expert testimony." Id. at 152. The Daubert inquiry is a flexible one, however, and these factors "do not constitute a 'definitive

2

checklist or test.'" <u>Kumho Tire</u>, 526 U.S. at 150 (quoting <u>Daubert</u>, 509 U.S. at 593).  The question to be resolved by the Court is whether the expert testimony is reliable and relevant under the <u>Daubert</u> and <u>Kumho Tire</u> standards in order to allow the testimony to go before the jury.  <u>Id</u>.

The Court's role is that of a gatekeeper only, limited to determining admissibility, not credibility, of the evidence. <u>Pipitone</u>, 288 F.3d at 250.  In <u>Scordill v. Louisville Ladder Group, L.L.C.</u>, 2003 WL 22427981 (E.D. La. Oct. 24, 2003), the district court noted that "its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system." <u>Id</u>. at *3.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  <u>Daubert</u>, 509 U.S. at 596.  "'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" <u>United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi</u>, 80 F.3d 1074, 1077 (5th Cir. 1996)(quoting <u>Viterbo v. Dow Chemical Co.</u>, 826 F.2d 420, 422 (5th Cir. 1987)); <u>see</u> <u>also</u> <u>Transcontinental Gas Pipeline Corp. v. Societe d'Exploration Section du Solitaire, S.A.</u>, 2007 WL 2712936 (E.D. La. Sept. 13, 2007).

As an initial matter, the Court finds that the defendants' motion is untimely. Rule 7.2(B)(3) of the Local Rules provides that "[u]nless otherwise ordered by the Case Management Order, all ... motions challenging an opposing party's expert shall be filed no later than fifteen calendar days after the discovery deadline." The discovery deadline in this case was February 1, 2008, and the defendants' motion was not filed until September 2, 2008. As a result, the defendants are not entitled to a ruling on their motion before trial. Nevertheless, the Court's gatekeeping obligation under Daubert is a continuing one, and it is within the Court's discretion to exercise that obligation despite the lateness of the defendants' motion. See Short v. Anangel Spirit Compania Naviera, S.A., 2002 WL 31741209 *1 (E.D. La. Dec. 6, 2002). The Court shall therefore proceed to address the merits of the motion.

It has been held that Daubert challenges to an opposing party's expert witness generally fall into three categories. See Queen Trucking, Inc. v. General Motors Corp., 2007 WL 4458919 *2 (N.D. Tex. June 8, 2007). First is a challenge of the expert's qualifications, since Fed.R.Evi. 702 requires "scientific, technical, or specialized knowledge ... [from an expert witness who is qualified because of his] knowledge, skill, experience, training, or education ...." Id. Second, the reliability of the expert's testimony may be challenged for a failure to employ "the same level of intellectual rigor that characterizes the practice of

4

an expert in the relevant field." Id. (quoting Kumho Tire, 526 U.S. at 152). Third is a challenge of the relevance of the expert's opinions. Id. (citing Fed.R.Evi. 702; Pipitone, 288 F.3d at 245). To assist the jury in its determination, the testimony must "fit" the facts of the case, i.e., there must be "a valid connection between the expert testimony and the pertinent inquiry." First Assembly of God Church v. Fondren, 2003 WL 25685226 *6 (E.D. Tex. Jan. 8, 2003)(citing Daubert, 509 U.S. at 591).

The defendants do not challenge the qualifications of Sink or Thompson. Instead, they assert that the experts' conclusions are "not based upon sufficient facts or data." Def. Mem., p. 4. Darrell Knox was involved in an automobile accident in March of 2006, and was treated by the defendants, whom he alleges were negligent in rendering medical care, which resulted in the subsequent amputation of his left leg. Knox has worked as an electrical technician offshore for 25 years. Following his amputation, he underwent therapy and training for use of his prosthetic, and on August 30, 2006, six months after his accident, was released by his attending physician and allowed to return to work in his previous job position. He has remained at that position for the last two years.

The defendants argue that Knox should not be allowed to put on expert testimony regarding future loss of earnings, because he cannot show that he will lose his employment as a result of an

impairment caused by negligence of the defendants.  The parties agree that Knox has been released by his physician to return to work and that he is presently working.  They further agree that the requirements of Knox's job are: (1) a high school degree, or equivalent; (2) Mineral Management Services certification; and (3) Coast Guard certification.  The parties' dispute concerns the third requirement.  Knox is currently certified with the Coast Guard; however, his certification will expire on November 30, 2010.  Knox asserts that as part of the Coast Guard certification process, he will be required to complete a water safety and survival course, and that because of his physical condition he will be unable to pass the course, making him ineligible for re-certification.  Pl. Mem., p. 4.  The defendants contend that Knox has not shown that the water safety and survival course is a condition of his continued employment, and that he has not shown that he is unable to pass the course.  Def. Mem., p. 7.

Mississippi law requires that loss of future earnings be proved to a reasonable certainty, and cannot be based on speculation and conjecture.  Woods v. Burns, 797 So.2d 331, 334 (Miss. App. 2001)(citing Flight Line v. Tanksley, 608 So.2d 1149, 1164 (Miss. 1992); Hudson v. Farrish Gravel Co., 279 So.2d 630, 635-36 (Miss. 1973)).

> "A claim for damages for a lost or diminished earning
> capacity must be supported by satisfactory proof of the
> fact of such impairment, the extent thereof, and, in the
> case of a claim for permanent impairment of earning

power, by satisfactory evidence of the permanency of the injury; and the proof should be made by the best evidence available.   Proof with certainty or mathematical exactness is not required, nor need the proof be clear and indubitable; but such damages must be established by substantial evidence and cannot be left to mere conjecture."

25A C.J.S. Damages § 162(8)b at 103-04 (1966)(quoted in Casey v. Texgas Corp., 361 So.2d 498, 499 (Miss. 1978)).

At this stage, the Court does not know precisely what the plaintiffs' evidence will be concerning Knox's loss of future earnings.  To support their claim, the plaintiffs must come forward with "substantial evidence" and "the best evidence available" to prove the requirements of the water safety and survival course, as well as proof that Knox's anticipated condition in November of 2010 will be such that he will be unable to pass the course.  Although it is stipulated that Coast Guard certification is a job requirement for Knox's present position, the plaintiffs must also present competent proof that the water safety and survival course is a mandatory component of that certification.   Further, the future effects of Knox's injury on his future capacity to earn must be established to a reasonable degree of certainty.   Mere conjecture, or even a possibility of the loss of his current employment will not warrant an award for future damages that may never be realized.   The proof must be such as to remove the plaintiffs' claim that Knox may lose his job in the future from mere speculation.   If the proof is insufficient to support the

7

experts' opinions, the defendants may make an exclusionary motion at trial.

The plaintiffs have also advanced an alternative argument that Knox's condition will cause him to "lose his competitive edge by age 60." Pl. Mem., p. 9. The defendants counter that Knox has testified that before he ever underwent his amputation, he planned to retire between the ages of 56 and 58. Def. Mem., p. 9. The plaintiffs do not dispute this statement, but claim that this is not Knox's current intention. The Court finds that this too is a fact issue that must be developed at trial.

The Court cannot find at this stage that the experts' opinions are so lacking in factual support as to be unreliable. Because the defendants' motion concerns the issue of whether the experts' opinions have an adequate factual basis, the Court shall defer its ruling until the facts have been adequately developed. Accordingly,

IT IS HEREBY ORDERED that the defendants' motion in limine **(docket entry 51)** to exclude any reference to or claim for loss of future income by Darrell Knox is DENIED WITHOUT PREJUDICE, and the defendants may renew their objection at trial.

SO ORDERED, this the 22nd day of September, 2008.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

8